UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRENDA COMBS,<br>    PLAINTIFF<br><br>VS.<br><br>R1 RCM, INC.,<br>    DEFENDANT | CASE NO. 1:19-cv-4851 |

## COMPLAINT AND JURY DEMAND

### Nature of the Case

1. Combs brings this action against her former employer, R1 RCM, Inc. ("R1"), under the Americans With Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*

2. Combs is a qualified individual with a disability who wants to work, needs to work, and is capable of performing essential job functions with reasonable accommodation.

3. Combs suffers from high blood pressure, diabetes, a hiatel hernia, Barrett's esophagus, and gastroparesis and related bowel issues, all of which require that she be able to use the restroom more frequently than an employee without those disabilities. She is able to meet productivity requirements by working a slightly different schedule than other employees and working additional hours in order to make up for the time she spends attending to her biological needs.

4. The worst possible employment scenario for Combs is a position in which she is expected to spend predetermined blocks of time on the telephone, meeting established productivity levels, without the ability to leave when her body dictates that she needs a break.

5. The essential functions of Combs's initial positions with R1, combined with the reasonable accommodations provided, permitted Combs to meet or exceed R1's reasonable expectations, but the last position with R1 was a remote telephone position without anyone present to assist, if necessary.

6. Combs communicated the issue to R1's management and human resources, but R1 required Combs to remain in a "worst possible scenario position" in which performance issues were a given; R1 then threatened her with a performance improvement plan, but terminated her instead without providing any plan for improvement.

## Jurisdiction and Venue

7. Jurisdiction is conferred on this Court and invoked under 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. § 12117.

8. Venue is proper in the Southern District of the State of Indiana, Indianapolis Division, under 28 U.S.C. § 1391(b), because R1's registered agent is located here, and the unlawful employment practices complained of occurred within this judicial district.

9. Defendant was an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) at all times relevant to this action and employed Combs in Indianapolis, Indiana.

10. Combs was an "employee" within the meaning of 42 U.S.C. § 12111(4).

11. Plaintiff Combs was an "individual with a disability" as defined by the ADA, 42 U.S.C. § 12102(1), at the time of and prior to her termination by R1.

12. Plaintiff Combs was a "qualified individual with a disability" as defined by the ADA, 42 U.S.C. § 12111(8), at the time of and prior to her termination by R1.

## Administrative Exhaustion

13. Section 107(a) of the ADA, 42 U.S.C. § 12117, incorporates by reference §706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5, and all conditions precedent to jurisdiction under 42 U.S.C. §2000e-5(f)(3), are present.

14. Combs satisfied her obligation to exhaust her administrative remedies by timely filing Charge of Discrimination No. 471-2019-03008 with the United States Equal Employment Opportunity Commission ("EEOC") on May 9, 2019, within 300 days of the commission of the alleged unlawful employment practices.

15. While the referenced EEOC Charge only checked the box titled "Retaliation," the particulars of the Charge alleged disability discrimination, including failure to accommodate, and the Respondent R1's position statement responded to a claim of disability discrimination.

16. The EEOC issued a Dismissal and Notice of Rights on September 12, 2019.

17.  On November 21, 2019, Combs filed an additional Charge of Discrimination against R1 alleging disability discrimination, Charge, No. 470-2020-00586, which was also filed within 300 days from the commission of the alleged unlawful employment practices.

18. The EEOC issued a Dismissal and Notice of Rights for Charge No. 470-2020-00586 on November 26, 2019.

19. This complaint was filed within 90 days of Combs's receipt of the EEOC's Dismissal and Notice of Rights for Charge Nos. 471-2019-03008 and 470-2020-00586.

**Parties**

20.  Plaintiff Combs is and was a citizen and resident of the State of Indiana at all relevant times.

21.  Defendant R1 is a Delaware corporation transacting business in Indiana and is registered as a foreign corporation with the Indiana Secretary of State.

**Factual Allegations**

22. Plaintiff Combs was hired by St. Vincent Hospital in the billing department in June of 2016 after being a temporary employee for eight months.

23. Shortly thereafter, R1 purchased or assumed responsibility for the St. Vincent billing operation.

24. In June of 2017 Combs signed an offer letter to be employed by R1 and was promised she we would not lose her seniority or position.

25. At all relevant times of employment Combs met or exceeded R1's legitimate performance expectations when her disabilities were reasonably accommodated.

26. Combs is a qualified individual with a disability, has a record of a disability and/or is perceived by R1 to be disabled as these terms are defined by the ADA.

27. Combs was diagnosed with high blood pressure in 2007, diabetes in 2008, a hiatel hernia and Barrets' esophagus in 2012, and gastroparesis in 2013.

28. In December of 2013, Combs was also diagnosed by her doctor with chronic anxiety.

29. Combs's conditions cause intermittent nausea, vomiting, bowel issues, and abdominal pain which intermittently prevents her from working.

30. Combs's physical condition was known to her supervisors, who recognized that she was frequently sick and had frequent doctors' appointments.

31. In August, 2017, Combs formally requested a reasonable accommodation in order to assist her in performing the essential functions of her position, including a flexible lunch-time to keep her blood glucose levels under control, frequent bathroom breaks to help manage her diabetes and gastroparesis, and wearing comfortable shoes. R1 agreed to these accommodations.

32. Combs applied for and received the position of PFS, since it was a position she was qualified to perform with her accommodations, and she was not required to spend much of the day on the telephone.

33. In the PFS position, Combs only had to service 40 accounts each day and her productivity was well over 40 accounts daily.

34. In October of 2017 Combs was informed by R1 that she was moving to the refund team.

35. Combs did not object to this position change, since she had been doing refunds and was qualified to perform that job. Combs was also told she would be training R1 international employees regarding her job functions.

36. On November 5, 2018, Combs was called into a meeting with R1 management, Krista Katris and Cole Elmer, and was told she was being placed into a new "remote" position of Patient Access Insurance Specialist effective November 12, 2018.

37. Combs was further advised she would have three weeks of training in the R1 Indiana facility before going remote, meaning she would be working alone from her home.

38. Combs expressed concerns about the new position regarding the amount of time she would be required to spend on the telephone. She was told by R1 management, Krista Katris and Cole Elmer, that she would just be on the phone 10% of the time.

39. After the meeting Combs emailed her supervisors, Krista Katris and Cole Elmer, and Matt Hand, a human resources employee, with additional questions concerning productivity.

40. Later that evening, supervisor Cole Elmer came to Combs and stated he would hate for her to lose her job if she did not take this position.

41. Human Resources manager, Matt Hand, advised Combs to complete another accommodation request and said he would discuss Combs's position with the new Human Resources manager, Daniela Zdravkovski.

42. On November 7, 2018, Daniela Zdravkovski talked to Combs by telephone and by email stating Combs needed to fill out a new accommodation form, since the previous form was over one year old.

43. On November 15, 2018, Combs completed the new accommodation request form and sent the request with her records from the previous year showing she was receiving an accommodation and was previously evaluated by a physician at St. Vincent regarding her accommodation for 2016.

44. R1 should have sent Combs for a reevaluation by another physician regarding her new accommodation request for her new position, since Combs's pervious accommodation request did not mention any time limit on the telephone.

45. Combs started a three-week training period on November 12, 2018 in the R1 "North" building in Indianapolis.

46. During the first week R1 had access and system problems, and the second week Combs was on prescheduled vacation.

47. While on vacation, Combs received a telephone call from the trainer "Julie," who told Combs that she had to pick up her computer to have "Skype" training from home on Monday.

48. Combs told Julie she was on vacation and could not pick up her computer until Monday.

49. When Combs took her computer home, she had no idea how to set it up and participate in the training.

50. It was not until Wednesday of the third week of training that Combs was able to use her computer and she only worked three accounts that week, as a result. Morgan Ballard sent Combs a "Skype" message asking about training and Combs replied that she needed more training because of the access and the system issue.

51. Morgan Ballard stated she would give another week of training for all of the four employees involved because they were all having the same issues.

52. On November 28, 2019, Combs had a "Skype" meeting about her accommodation requests with Morgan Ballard, Amber, and Daniela Zdravkovski. Combs was approved for flexible lunch and frequent restroom breaks, but her productivity accommodation was denied and they did not talk about limiting time on the telephone.

53. Combs communicated the issue to R1's management and human resources in a November 28, 2018 "Skype" call in which she noted the impossibility of meeting

productivity requirements if her disabilities necessitate she "drop" a call to use the restroom, but R1's response was she needed to meet productivity.

54. Morgan Ballard sent Combs a re-cap of the meeting in an email and Combs responded that the productivity requirement was an issue due to her disabilities; Combs asked Ballard to work with her to meet productivity, but Ballard did not.

55. Combs attended a meeting on December 6, 2018, with Ebony Willhite, Morgan Balland, Latrenda Jones, and the trainer, Julie. Combs managers told her she was not retaining information, was taking too long on accounts, and inputting incorrect information in accounts. Combs managers laughed at her and belittled her in this meeting.

56. But "Julie" approved all the accounts Combs did and Julie also said Combs was doing well.

57. This December 6, 2018 meeting stemmed from management not wanting to accommodate Combs.

58. Combs asked human resources manager, Daniela Zdravkovski, in an email if there any other position that would better accommodate her, but Daniela responded that Combs was required to stay in her position for a minimum of 12 months before she would be considered for an internal transfer.

59. On December 11, 2018, Lucias (team leader) was instructed to "Skype" with Combs to watch her work accounts. Lucias "signed off" on Combs's performance

stating Combs was doing fine. Then later that day Lucias stated he could not sign-off on Combs because Morgan wanted to keep track of Combs's accounts. Her accounts were reviewed for a couple of weeks with no issues, and approved on December 26, 2018.

60. In February, 2019, Combs was assigned a sponsor, "Tom," to help her with productivity. Tom "Skyped" with Combs as she was working accounts. Tom stated that Combs was meeting productivity and her accounts were done correctly. That was confirmed in an email from Tom sent to Combs and R1's management.

61. Combs repeatedly requested reassignment to a position that did not require extensive telephone usage and identified potential positions, but R1 denied her requests.

62. On January 15, 2019, Combs filed a complaint with the R1 Ethics Point Hotline about her accommodation request. Arthur Salz, Manager Compliance, received the complaint and responded on January 17, 2019, as follows:

> "You submitted a case noting that your accommodation was not approved. We received your accommodation request and met with the appropriate parties on both the conversation that occurred as well the information on what was approved and what was not. As communicated to you, we have asked your HR Business Partner to meet with you as a follow-up to answer your questions on your accommodation. Your HR Business Partner has been working with your leadership team on the answers and will be the best

person to answer your remaining questions. I will follow-up with her to ensure she has reached out or will be.

As both of these have now been addressed and I have provided you with the information, this case is closed. For questions on your accommodation, please work with your HR Business Partner and leaders. Thank you."

63. In February, 2019, Combs and human resources manager, Daniela Zdravkovski, exchanged emails concerning Combs's request for an accommodation; Combs cited R1's Disability Accommodations Policy, specifically "4.2 Examples of Reasonable Accommodation," which includes as possible accommodations, "Job Restructuring" and "Reassigning an Associate to a vacant position for which he or she is qualified." The reassignment example states no requirement that the R1 employee occupy a position for a minimum of twelve months before being reassigned to another position as part of a reasonable accommodation.

64. But Zdravkovski cited the requirement contained in another policy of being in a position for a minimum of twelve months that is applicable to "internal transfers (new role/job title) and promotions." This language does not state that it applies to reasonable accommodations.

65. A policy requiring that a disabled employee remain in a position the employee cannot perform for at least twelve months before being reassigned to another position that would accommodate the employee would make the "reassignment"

accommodation unreasonable, since the employee would be required to fail in the first position for several months before being accommodated.

66. R1's strategy was to force Combs to stay in the remote telephone position for at least twelve months because R1 knew she could not perform the essential functions of that position and they could terminate her before being required to accommodate her by reassignment to a position she could perform.

67. R1 told Combs she was being considered for a performance improvement plan, but no such plan was presented to Combs—she was terminated instead.

## Legal Causes of Action

### COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

68. Plaintiff Combs incorporates paragraphs 1 through 67 by reference.

69. Combs was at all relevant times a qualified individual with a disability under the ADA.

70. Combs was at all relevant times capable of performing the essential functions of her job with reasonable accommodations.

71. Defendant R1 was able to reasonably accommodate Combs without undue hardship, but refused to do so.

72. Defendant R1's actions violated the ADA when it refused to accommodate her disabilities.

73. R1's actions violated the ADA when it terminated Combs's employment.

74. As a result of R1's adverse employment actions Combs has been damaged.

### COUNT II – RETALIATION – AMERICANS WITH DISABILITIES ACT

75. Plaintiff Combs incorporates paragraphs 1 through 67 by reference.

76. Defendant R1 terminated Combs in retaliation for her requesting a reasonable accommodation or in retaliation for her exercising statutorily–protected conduct in requesting an accommodation.

77. On January 15, 2019, Combs filed a complaint with the R1 Ethics Point Hotline about R1's failure to accommodate her by a job restructuring or reassignment, and on March 27, 2019, R1 terminated Combs.

78. R1 terminated Combs because she file an ethics complaint about R1's failure to provide a reasonable accommodation for her disabilities.

79. R1's actions were intentional, willful, and done in reckless disregard of Combs' ADA rights.

### Relief Requested

80. Plaintiff Combs respectfully requests that this Court: enter judgment for Combs as follows:

(a) Award Combs back pay, bonuses, and fringe benefits in an amount to be determined at trial;

(b) Award Combs compensatory and punitive damages in an amount to be determined at trial;

(e) Award Combs pre- and post-judgment interest, costs and reasonable attorney's fees; and

(f) Grant such further relief as the Court may deem just and proper.

## Jury Demand

Under Fed.R.Civ.P. 38(b), Combs demands a trial by jury.

Respectfully submitted,

/s/ Michael J. Cork

Michael J. Cork Esq.
5754 N. Delaware St.
Indianapolis, IN 46220-2528
317-517-4217
Cork0@icloud.com
Counsel for Plaintiff, Brenda Combs

https://d.docs.live.net/4c24b576ac702068/Combs v. R1 RCM/Combs-Pleadings/